SUMMIT COUNTY BOARD OF HEALTH, Appellee,

v.

PEARSON et al., Appellants.

[Cite as *Summit Cty. Bd. of Health v. Pearson,* 157 Ohio App.3d 105, 2004-Ohio-2251.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 21666.

Decided May 5, 2004.

**106**

[REDACTED]

William T. Whitaker, for appellants.

Irving B. Sugerman, for appellee Copley Township Board of Trustees.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Anita L. Davis, Assistant Prosecuting Attorney, for appellee Summit County Health District.

---

CARR, Presiding Judge.

{¶ 1} Appellant, Lorenza Pearson, appeals from a judgment of the Summit County Court of Common Pleas that affirmed a decision of the Summit County Board of Health ("Board of Health"), finding that his property was a public health nuisance. This court affirms.

I

{¶ 2} Lorenza and Barbara Pearson are the owners of property at 2060 Columbus Avenue, Copley Township. On their property, they keep a collection of exotic and domestic animals, including lions, tigers, leopards, bears, foxes, pigeons, dogs, and an alligator. At the time of the Board of Health hearing, they had 44 large cat species and 16 black bears.

{¶ 3} In the spring and summer of 2001, complaints regarding odors and the animals on the Pearsons' property were reportedly made to the Summit County Health Department and to the Chief of the Copley Police Department. As a result of those complaints, on September 28, 2001, the Health Department conducted an inspection, along with the Copley Township Zoning Department, local police and fire departments, the USDA, and the Ohio Department of

Natural Resources, Division of Wildlife. The Board of Health found that the inspection revealed the following:

"Feces and urine observed in cages and large buckets around cages. Blood accumulation was observed on ground around butchering area. Animal bones in various stages of decomposition observed on ground around property and in animal cages. Numerous animals housed on property including lions, tigers, bears, foxes, pigeons, alligator, and dogs. Odor was excessive."

{¶ 4} On March 1, 2001, an administrative conference was conducted at which Pearson and his attorney were present. Pearson was advised to take the necessary steps to bring his property into compliance with the applicable laws and regulations in order to abate the nuisance. Specifically, he was advised to obtain an EPA-approved waste collection and treatment system and to empty the dumpsters three times a week in the winter, and six times a week in the summer. Pearson was also advised to provide documentation that the animals had been vaccinated, were being properly cared for, and did not pose a hazard to public health in regard to certain diseases.

{¶ 5} The Health Department thereafter engaged in an effort to resolve the problem. It issued orders to abate nuisance conditions on October 19, 2001, December 4, 2001, February 14, 2002, and March 7, 2002, and intermittent inspections were conducted by members of the Board of Health, Ohio EPA, and/or USDA on November 28, 2001, January 11, 2002, February 1, 2002, February 13, 2002, and April 23, 2002. Little improvement was reported. Pearson refused to permit inspections on April 8, 2002, May 6, 2002, and June 13, 2002.

{¶ 6} Because Pearson failed to abate the nuisance conditions, the matter proceeded to an administrative hearing before the Board of Health on June 13, 2002. Pearson was present and represented by counsel. Evidence, in the form of testimony, documents, and pictures of the property, was introduced. At the conclusion of the hearing, the Board of Health issued Resolution 160–02 in which it made numerous findings of fact, and concluded the following as a matter of law:

"That the evidence on the whole record before the Board of Health affirmatively demonstrates that unsanitary conditions and public health concerns exist on the property due to the unsanitary conditions of the facility relating to the inadequate collection, storage, treatment, and disposal of fecal matter, urine, body fluids, and decaying feed and thereby violating the standards established by the Environmental Health Code of the Summit County Board of Health on the property located at 2060 Columbus Ave., Copley Township, Summit County, Ohio, owned by Lorenza and Barbara Pearson and causing a public health nuisance."

{¶ 7} The Board of Health declared the property a public health nuisance and ordered Pearson to remove all animals from the property unless nuisance conditions were abated within ten days.

{¶ 8} Pearson appealed this ruling to the Summit County Court of Common Pleas, pursuant to R.C. 2506.01 et seq. That court affirmed the decision of the Board of Health, finding that the board's order was supported by a preponderance of reliable, probative, and substantial evidence. Pearson now appeals from the order of the court of common pleas to this court and assigns one error for review.

## II

## ASSIGNMENT OF ERROR

"The trial court erred in upholding the order of the Summit County Board of Health because it is not supported by substantial, reliable and probative evidence and is arbitrary, capricious and unreasonable."

■ {¶ 9} In an administrative appeal, the court of common pleas weighs the evidence in the record and uses the results of its weighing of the evidence to determine whether the administrative order is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. The standard to be applied by the court of appeals, on the other hand, is " 'more limited in scope and requires the court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.' " *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 613, 693 N.E.2d 219, quoting *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848.

{¶ 10} The arguments Pearson sets forth in his supporting brief will be considered against this standard of review.

■ {¶ 11} Pearson first contends that the trial court erred in affirming the decision of the Board of Health because there was no evidence to support a finding that the property was a public health nuisance. In particular, he disputes the board's finding that there were animal carcasses, feces, or other waste in the cages because pictures taken during the September 2001 inspection do not so demonstrate. He also disputes the evidentiary value of the September 2001 pictures because they reflect only a "moment in time" as opposed to a continuing pattern of conduct.

{¶ 12} In reaching its decision, the Board of Health indicated that it reviewed all of the evidence before it. That evidence included more than pictures taken on September 2001. It also included the testimony of two members of the Board of Health covering several on-site inspections, and additional documentary evidence as well.

{¶ 13} Robert Hasenyager, Supervisor in the Division of Environmental Health, testified, for example, that he inspected the property, not only in September 2001, but also in November 2001 and February 2002. He stated that these subsequent inspections disclosed feces in cages and that the dumpsters were not being emptied with adequate frequency. Hasenyager also testified that inspectors were refused access to the property on three occasions. Hasenyager further stated that, as of the time of the hearing in June 2002, the items cited by the Board of Health in March 2001 still had not been accomplished by Pearson. Hasenyager reiterated that there was still no waste collection system, no disposal of waste with adequate frequency, no demonstration of proper vaccinations, and no showing that the animals were not a threat to the public in terms of disease.

{¶ 14} Laura Wall–Stewart, Program Coordinator, Division of Environmental Health, also testified. According to her, an inspection by the USDA found inadequate documentation of sufficient veterinarian care, excessive pooling of water and waste inside animal cages, inadequate cleaning of urine, a severe odor problem, inadequate secondary containment of animals, questionable structural strength of three lion pens, concerns regarding separation of animals causing aggression in the animals, and concerns regarding the transportation of animals to exhibits.

{¶ 15} Pearson has attempted to argue that these matters are not probative because the USDA inspects with regard to the safety of the animals. While these matters may well be important to the safety of the animals, it cannot reasonably be denied that they are also relevant to the health and safety of humans. In addition, as stated below, there was no objection to this testimony.

{¶ 16} For his part, Pearson cross-examined these witness and presented a veterinarian's letter that stated that the animals "generally appear healthy and well-fed" on her regular visits.

{¶ 17} Upon review, this court cannot find, as a matter of law, that the trial court erred in finding that the decision of the Board of Health—that the property was a public health nuisance—was supported by a preponderance of substantial, reliable, and probative evidence.

{¶ 18} Next, Pearson asserts error in the admission of three examples of hearsay testimony: (1) testimony by Wall–Stewart regarding the USDA inspection, claimed to be irrelevant; (2) testimony of complaints by unnamed persons,

claimed to be unreliable; and (3) testimony that EPA had taken over the process of determining the need for a waste removal system.

{¶ 19} This court notes that administrative agencies are not bound by the strict rules of evidence applied in a court. *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 6, 7 OBR 1, 453 N.E.2d 1262, citing *Provident Sav. Bank & Trust Co. v. Tax Comm.* (1931), 10 O.O. 469, 1931 WL 1656. In particular, the hearsay rule is relaxed in administrative hearings. Id. See, also, *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 44, 23 O.O.3d 57, 430 N.E.2d 468. Nevertheless, any error in this regard is waived because Pearson failed to object to this evidence at the time of the hearing. *Felice's Main Street, Inc. v. Ohio Liquor Control Comm.* (Oct. 31, 2002), 10th Dist. No. 01AP–1405, 2002-Ohio-5962, 2002 WL 31429751; *Ray v. Harrisburg* (Dec. 20, 1994), 10th Dist. No. 94APE04–550, 1994 WL 714590 ("This well-settled rule likewise applies to administrative appeals, requiring that objections be raised at the hearing level.").

{¶ 20} Next, Pearson asserts error in the lack of expert testimony that the conditions on the property created any particular health hazard or risk of disease. Pearson cites no authority for the proposition that expert testimony is required in this regard. This court, therefore, considers Pearson's argument in terms of whether the decision of the court of common pleas was not supported by a preponderance of reliable, probative, and substantial evidence.

{¶ 21} As set forth above, a great deal of testimony was presented to the Board of Health, which, if credited, would support a finding of a public health nuisance. Moreover, the members of the Board of Health themselves possess expertise by virtue of appointment, as well as experience. As the Second District Court of Appeals has indicated: "The Board of Health has presumably acquired some expertise in the evaluation of the impact of conditions upon the public health and safety, which is entitled to some deference." *Coy v. Montgomery Cty. Bd. of Health* (Apr. 7, 2000), 2d Dist. No. 18083, 2000 WL 353139. Upon review, this court cannot conclude that the decision of the court of common pleas was not supported by a preponderance of reliable, probative, and substantial evidence. The argument is overruled.

{¶ 22} Finally, Pearson contends that the reason for standing water on the property was that the Board of Health and EPA gave conflicting directions to Pearson. This argument invokes a factual dispute properly considered by the Board of Health, weighed by the court of common pleas, and does not demonstrate an error cognizable by this court on review.

{¶ 23} As explained above, this court's function does not involve a determination as to the weight of the evidence. *CMK, Ltd. v. Lorain Cty. Bd. of Commrs.*, 9th Dist. No. 02CA008185, 2003-Ohio-5160, 2003 WL 22232384, at ¶ 7, citing *Kisil*

*v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848.   Given our limited review, this court cannot find, as a matter of law, that the trial court's holding was unconstitutional, illegal, arbitrary, capricious, or unreasonable, or that it is not supported by a preponderance of substantial, reliable, and probative evidence.   Rather, this court finds that the trial court did not err in concluding that the Board of Health properly determined that Pearson's property was a public health nuisance.   Pearson's sole assignment of error is overruled.

### III

{¶ 24} Finding no merit in Pearson's sole assignment of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

SLABY and WHITMORE, JJ., concur.