[Cite as *Deitz v. Shelby Cty. Clerk of Court*, 2026-Ohio-63.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SHELBY COUNTY

PAUL DEITZ,                                    CASE NO. 17-25-10

     PLAINTIFF-APPELLANT,

  v.

CLERK OF COURTS OF SHELBY
COUNTY, ET AL.,                                OPINION AND
                                               JUDGMENT ENTRY
     DEFENDANTS-APPELLEES.


Appeal from Shelby County Common Pleas Court
Trial Court No. 24CV000296

Judgment Affirmed

Date of Decision:  January 12, 2026


APPEARANCES:

    *Paul Deitz,* Appellant

    *Michael P. Doyle, Jr.* for Appellees

**WILLAMOWSKI, J.**

{**¶1**} Plaintiff-appellant Paul Deitz ("Deitz") filed a *pro se* appeal of the judgment of the Shelby County Court of Common Pleas, arguing that the trial court erred by failing to set aside a condemnation order issued by the Sidney-Shelby County Board of Health ("SSCBH"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} In 2022, Deitz constructed a pole barn on his property and obtained the Sidney-Shelby County Health Department's ("SSCHD") approval for this project. On April 29, 2024, the builder of Deitz's pole barn filed a nuisance complaint with the SSCBH, reporting that Deitz appeared to be using the pole barn as a two-story dwelling. The complaint stated that the pole barn had not gone through the appropriate inspections for such use and was not built "to support load bearing walls up [and] . . . downstairs." (Doc. 115-10).

{**¶3**} In response to an inquiry from the SSCHD, Deitz reported that "[t]he barn is being used as permitted." (Doc. 115-18). The SSCBH then sent successive communications to Deitz that directed him to schedule a property evaluation and to appear at an administrative hearing in July. However, Deitz did not comply with these directives.

{¶4} After Deitz appeared at a board of health meeting in August, the SSCBH voted to refer this matter to the Shelby County Prosecutor's Office ("Prosecutor's Office") over his failure to comply with the water system and sewage treatment rules. Since Deitz had not scheduled a property evaluation, the SSCHD approached Deitz's neighbor and obtained permission to enter onto the neighbor's property.

{¶5} From a vantage point on this neighbor's property, SSCHD personnel observed that the pole barn had "upstairs patio doors, [an] air conditioner, children's toys, a shower nozzle, propane tanks, etc." (Doc. 115-106). The Prosecutor's Office then contacted Deitz and sought his cooperation. After no evaluation was scheduled, a search warrant was obtained.

{¶6} On September 19, 2024, SSCHD personnel went to Deitz's property with the search warrant and discovered a number of violations related to the pole barn. On November 7, 2024, the Prosecutor's Office sent Deitz a letter that informed him of these violations and stated that, if these issues went unabated, the pole barn would be condemned in sixty days.

{¶7} On November 22, 2024, Deitz filed a pro se complaint that named the Clerk of Courts of Shelby County as a defendant. He later filed an amended complaint that added employees of the SSCHD and the Prosecutor's Office as defendants. In these complaints, he alleged that his constitutional rights were violated and sought a temporary restraining order.

{¶8} On December 10, 2024, Deitz also filed a notice of appeal, challenging the SSCHD's decisions. In response, the defendants filed a motion to dismiss Deitz's complaint. The trial court later dismissed the claims in Deitz's complaint but found that his notice of appeal was sufficient "to constitute an administrative appeal" of the decisions related to his pole barn. (Doc. 74).

{¶9} At a conference on March 10, 2025, the trial court asked about the extent of the condemnation order that SSCBH had issued on January 13, 2025. The text of this order prohibited "any occupancy of the building." (Doc. 115-143). But the Prosecutor's Office indicated that the order was ultimately intended "to prevent any permanent or temporary personal habitation." (Doc. 83).

{¶10} On March 13, 2025, the trial court issued a judgment entry that modified the condemnation order so that Deitz was "entitled to use of his building for storage of personal property and for animal husbandry." (Doc. 83). The trial court also issued an order directing the parties to file briefs on the issues raised by Deitz in his administrative appeal.

{¶11} On July 2, 2025, the trial court issued a judgment entry, concluding that (1) Deitz was afforded appropriate procedural due process protections; (2) no basis existed to exclude the evidence obtained by the administrative search warrant; and (3) substantial evidence supported a condemnation order against the use of the pole barn for residential or business purposes.

{¶12} Deitz filed his notice of appeal on July 17, 2025. On appeal, he raises the following five assignments of error:

### First Assignment of Error

**The court erred by failing to reverse SSCBH's decision as unconstitutional under Ohio Const. Art. I, §§ 14, 16, ignoring the September 4, 2024, trespass and invalid warrant (July2Amended Decision.pdf, Pages 4-5; March 10, 2025, Transcript, Page 5).**

### Second Assignment of Error

**The court erred by overlooking SSCBH's bad faith and retaliation, including Lloyd's complaint, Zimmerman's conflict, Rindler-Woodruff's actions, and access restrictions (July 2 Amended Decision, Page 6; Court of Claims, Pages 1-2, 4-5, 7).**

### Third Assignment of Error

**The court erred by affirming the Notice without substantial evidence, ignoring the disconnected septic line and unsigned promissory agreement (March 10, 2025, Transcript, Page 4; Exhibit A, Page 154).**

### Fourth Assignment of Error

**The court misapplied deference, evading full review (July 2 Amended Decision, Pages 3-4).**

### Fifth Assignment of Error

**The court failed to address access restrictions chilling petition rights (December 6, 2024, Mumford memo; April 25, 2025, emails/memo; August 7, 2025, affidavit).**

*First Assignment of Error*

**{¶13}** Deitz asserts that the trial court erred by failing to reverse the SSCBH's order on the grounds that the government engaged in unconstitutional actions, including activities that rendered the search warrant invalid.

Legal Standard

**{¶14}** The protections of the Fourth Amendment to the United States Constitution "extend to administrative searches." *Dawson v. City of Richmond Heights*, 2018-Ohio-1301, ¶ 16 (8th Dist.). In this context,

> [p]robable cause to issue an administrative warrant for entry into premises is the subject of a flexible standard of reasonableness given the agency's particular demand for access and the public need for effective enforcement of the regulation involved.

*Bd. of Trs. Blanchard Twp. v. Simon*, 2023-Ohio-1704, ¶ 32 (3d Dist.), quoting *State v. Finnell*, 115 Ohio App.3d 583, 589 (1st Dist. 1996). Further,

> the evidence of a specific violation required to establish administrative probable cause must 'show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed.'

*Dawson* at ¶ 17, quoting *W. Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 958 (11th Cir. 1982). *See* R.C. 2933.21(F). In deciding whether to issue a search warrant, a trial court is to examine "all the circumstances set forth in the [supporting] affidavit, including the veracity and basis of knowledge of persons supplying hearsay information . . . ." *State v. George*, 45 Ohio St.3d 325, 329 (1989), quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983).

Legal Analysis

{¶15} Deitz raises three main arguments. First, he alleges that the warrant application did not mention that he offered to cooperate with the SSCHD and that this omission rendered the warrant invalid. However, the Prosecutor's Office denied receiving this cooperation. Further, the record contains no indication that Deitz ever scheduled a property evaluation as requested by the SSCHD.

{¶16} The record establishes that the SSCHD personnel observed indications that the pole barn was being used as a dwelling. The warrant application noted these observations; identified the code sections at issue; and stated that neighboring properties could be affected if the septic system, plumbing, or well were not properly connected to the pole barn.

{¶17} In examining Deitz's arguments, the trial court found "that the affidavit in support of the issuance of the warrant provides an accurate summary of the facts of the investigation and explanation of the need for an inspection." (Doc. 158). Having reviewed the record, we conclude that Deitz's first argument does not provide a legal basis to find that the search warrant was invalid.

{¶18} Second, Deitz asserts that SSCHD inspectors trespassed on his neighbor's property to observe his pole barn. "A trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience." *McKinney v. Hartz & Restle Realtors, Inc.*, 31 Ohio St.3d 244, 246 (1987). However, the record establishes that the

-7-

inspectors obtained the permission of Deitz's neighbor to enter onto the land adjacent to Deitz's property.

{¶19} Deitz also asserts that the inspectors bypassed his "no trespass" signs by entering onto his neighbor's property. But once the inspectors were stationed at a lawful vantage point on the adjacent property, they were "free to observe whatever . . . [could] be seen from a place where they [were] . . . entitled to be.'" *State v. Andrews*, 2025-Ohio-2803, ¶ 30 (4th Dist.), quoting *State v. Buzzard*, 2007-Ohio-373, ¶ 15. *See Woody v. City of Granite City*, 2019 U.S. Dist. Lexis 49459, *22 (S.D. Ill. Mar. 25, 2019). Since the inspector's entry onto the neighbor's land was authorized, Deitz's second argument does not provide a legal basis to find that the search warrant was invalid.

{¶20} Third, Deitz argues that, after a case management conference on March 10, 2025, the trial court unconstitutionally issued two unannounced judgment entries in the absence of an emergency. These orders set a briefing schedule and decided a motion for a preliminary injunction that Deitz had filed.

> Before [a] final judgment is issued, a trial court possesses jurisdiction and is authorized to rule on the matters before it. . . . Thus, while a case is pending, trial courts can, and routinely do, issue various interlocutory orders that modify, dissolve, vacate, and otherwise affect prior interlocutory orders—both final and non-final.

*Palmer v. Bowers*, 2017-Ohio-355, ¶ 11 (9th Dist.). Further, "a trial court has the inherent authority to manage its own proceedings and control its own docket." *Zimpfer v. Roach*, 2017-Ohio-8437, ¶ 46 (3d Dist.).

**{¶21}** In the two judgment entries issued after the March 10, 2025 conference, the trial court merely decided a pending motion and managed its docket by setting a briefing schedule. Deitz has not identified any legal authority that would suggest that the issuance of these judgment entries in the absence of an emergency was unconstitutional. Thus, Deitz's third argument is without merit. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶22}** Deitz alleges that the trial court "erred by overlooking" evidence that purportedly established that the SSCHD conducted an investigation in bad faith. (Appellant's Brief, 3).

Legal Standard

**{¶23}** R.C. 2506.01 provides for appeals of a final order or decision of a board, department, "or other division of any political subdivision of the state . . . ." *See also Pelzl v. Greene County Combined Health Dist*., 2008-Ohio-2068, ¶ 14 (2d Dist.); *Duffiled v. City of Barberton*, 2005-Ohio-1817, ¶ 13 (9th Dist.); Adm. Code 3701-36-01(A), (G). R.C. 2506.04 sets forth the standards of review that are to govern these appeals. In an appeal of an order subject to R.C. 2506.01(A), a

> common pleas court considers the 'whole record' . . . and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.

*T & R Props. v. Bd. of Zoning Appeals*, 2025-Ohio-2947, ¶ 42 (5th Dist.), quoting

*Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000).

**{¶24}** In turn, the judgment rendered by the court of common pleas "may be

appealed by any party on questions of law . . . ." R.C. 2506.04. Thus, in an appeal

of an order subject to R.C. 2506.01(A), a court of appeals is to conduct a review that

is "more limited in scope." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984).

> The court of appeals reviews the common pleas court's judgment only
> on questions of law and does not have the same extensive authority to
> weigh the evidence. . . . Within the ambit of questions of law for
> appellate-court review is whether the common pleas court abused its
> discretion. . . . The court of appeals must affirm unless it finds, as a
> matter of law, that the trial court's decision is not supported by a
> preponderance of reliable, probative, and substantial evidence.

(Citations omitted.) *City of Independence v. Office of the Cuyahoga County Exec.*,

2014-Ohio-4650, ¶ 14.

Legal Analysis

**{¶25}** Deitz alleges that he asked the builder of his pole barn to address an

issue with the roof and that the builder filed the nuisance complaint with the SSCBH

in retaliation. However, the trial court found that

> the contractor who built the structure provided a detailed analysis of
> the structural, plumbing, and electrical deficiencies in the structure if
> it was used for residential purposes. No one would be better able to
> alert regulatory authorities to these problems.

(Doc. 158). Deitz also argues that the fact that the Prosecutor's Office was in

communication with the SSCBH about his use of the pole barn and the fact that the

SSCHD's findings were not disclosed expeditiously indicate that these entities conducted a coordinated investigation in bad faith. However, the trial court found

> commendable the conduct by SSCHD when providing notices and giving Appellant [Deitz] opportunities to provide information and input during the process. The . . . SSCHD provided over a dozen formal and informal notices describing its investigation, subjects of concern and intentions regarding administrative action. . . . Notably, when Appellant sent any email and/or requested any documents, appropriate responses were sent.

(Doc. 158). On appeal, Deitz asserts that the trial court overlooked the facts that he identifies as establishing that the SSCHD acted in bad faith. *See Williams v. D&J House Drs., LLC*, 2025-Ohio-4716, ¶ 19-21 (The fact that a judgment entry does not expressly reference every item in the record does not necessarily establish that the trial court failed to review the unmentioned evidentiary materials.).

{¶26} In other words, Deitz is essentially asking this Court to interpret the actions he identifies in a manner that differs from the trial court's interpretation. He is asserting that, properly considered, the purportedly overlooked evidence weighs in favor of his claim that the investigation was conducted in bad faith and weighs against the trial court's conclusions. *See Karnofel v. Nye*, 2016-Ohio-3406, ¶ 15 (11th Dist.); *Hays v. Young ex rel. Young*, 2024-Ohio-3149, ¶ 33-34 (11th Dist.).

{¶27} However, in administrative appeals under R.C. 2506.04, appellate courts review the decisions of trial courts "only on questions of law" and "do not have the same power [as trial courts] to weigh the evidence." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 25. For this reason, we decline

Deitz's invitation to reweigh the evidence and instead restrict our analysis to the more limited scope of review provided for in R.C. 2506.04. *See Minerva Dairy, Inc. v. Vill. Of Minerva*, 2025-Ohio-902, ¶ 47 (5th Dist.).

**{¶28}** Initially, we note that, on their face, the facts identified by Deitz do not suggest that the SSCHD acted in bad faith. Further, the trial court did not interpret the evidence in the record as suggesting that the SSCHD acted in bad faith. Having reviewed the record, we conclude that Deitz's arguments fail to establish that the trial court's decisions on these matters were, as a matter of law, unsupported "by a preponderance of reliable, probative, and substantial evidence." *Summit County Bd. of Health v. Pearson*, 2004-Ohio-2251, ¶ 9 (9th Dist.), quoting *Kisil* at 34. Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

**{¶29}** Deitz asserts that the trial court affirmed a decision from the SSCBH that was not supported by the evidence.

Legal Standard

**{¶30}** We reincorporate the legal standard for appeals of administrative decisions that was set forth under the second assignment of error.

Legal Analysis

**{¶31}** Deitz asserts that the SSCBH's order was not supported by evidence. However, the trial court found that

> the observation and inspection pursuant to the warrant further substantiate the deficiencies [with the pole barn]. That there exist pictures of the deficiencies and purported use of the premises for habitation purposes enhances the conclusion by SSCHD. Indeed, these pictures refute Appellant's claim that the premises w[ere] only being used for storage and husbandry purposes; they support the conclusion that residential use was occurring.
>
> Statements of fact and conclusions by staff and inspectors apparently familiar with construction and regulatory requirements add additional support for the decision by SSCHD. . . .

(Doc. 158). Against this conclusion, Deitz asserts that the trial court ignored several evidentiary materials in the administrative record, including a picture that indicates a septic line on his property was not connected.

{¶32} As an initial matter, we note that "[t]he trial court's failure to list every document . . . [a litigant] filed does not indicate the unmentioned documents were ignored." *Ohio AG v. John Doe 26*, 141 Ohio App.3d 242, 254 (10th Dist.). Further, Deitz appears to again be asking this Court to reweigh the evidence and to assign greater weight to the picture he identified. Once again, we decline to reweigh the evidence and restrict our analysis to the more limited scope of review provided for appellate courts in R.C. 2506.04. *Cleveland Clinic Found.*, 2014-Ohio-4809, at ¶ 25; *Minerva Dairy*, 2025-Ohio-902, at ¶ 47 (5th Dist.).

{¶33} Turning to the record, the SSCHD preserved a detailed administrative record of this proceeding; submitted at least thirty-nine pictures of the issues with the pole barn; identified roughly eleven regulations that were being violated; and provided a detailed explanation of how these issues could be rectified. In its

judgment entry, the trial court expressly relied on these materials in reaching its decision to uphold the modified condemnation order. *See Pearson*, 2004-Ohio-2251, at 19-21 (9th Dist.).

{¶34} Having examined the record, we conclude that Deitz's arguments fail to establish that the trial court's decision was, as a matter of law, unsupported "by a preponderance of reliable, probative, and substantial evidence." *Pearson* at ¶ 9, quoting *Kisil*, 12 Ohio St.3d 30, at 34. Accordingly, the third assignment of error is overruled.

*Fourth Assignment of Error*

{¶35} Deitz argues that, in examining the SSCBH's decision, the trial court did not follow *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 3.

Legal Standard

{¶36} The judicial branch has "the ultimate authority to render definitive interpretations of the law. . . ." *TWISM* at ¶ 33. For this reason,

> the judicial branch is never required to defer to an agency's interpretation of the law. As we explain, an agency interpretation is simply one consideration a court may sometimes take into account in rendering the court's own independent judgment as to what the law is.

*Id.* at ¶ 3. If ambiguity exists in a provision, "a court may consider an administrative agency's construction of a legal text . . . ." *Id*. at ¶ 44. However,

> [t]he weight, if any, the court assigns to the administrative interpretation should depend on the persuasive power of the agency's

interpretation and not on the mere fact that it is being offered by an administrative agency.

*Id*. at ¶ 45.  Thus, "Ohio courts are not compelled to adopt th[e] agency's preferred reading of the law—unless, of course, its reading is the best one."  *Id*. at ¶ 63.

Legal Analysis

**{¶37}** Deitz argues that the trial court failed to follow *TWISM* in the process of reviewing the SSCBH's decision.   However, in this case, Deitz ultimately challenged the condemnation order as being unsupported by the evidence.  Deitz does not identify an instance in which the trial court interpreted an ambiguous legal provision in this case or inappropriately deferred to an administrative agency's interpretation of any legal provision.  *TWISM* at ¶ 29.

**{¶38}** In summary, the *TWISM* decision addressed "judicial deference to administrative agencies' legal interpretations."   *State ex rel. Berry v. Indus. Comm'n*, 2025-Ohio-4720, ¶ 15, 26, citing *TWISM* at ¶ 3.  Since this case did not involve an administrative agency's interpretation of a legal provision, Deitz has failed to demonstrate how the trial court ran afoul of *TWISM* at ¶ 3, 63.  Accordingly, the fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶39}** Deitz asserts that the various state actions in this case chilled his right to petition the government.

Legal Standard

**{¶40}** "[A] bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial." *Morgan v. Eads*, 2004-Ohio-6110, ¶ 13. Further, "[m]atters outside the record cannot be used to demonstrate error . . . ." *Herron v. Herron*, 2021-Ohio-2223, (9th Dist.), quoting *In re J.C.*, 2010-Ohio-637, ¶ 15 (9th Dist.). For these reasons, appellate courts are to review the "evidence set forth in the record of appeal and cannot consider facts outside that record." *Nunn v. Mitchell*, 2024-Ohio-4586, ¶ 15 (8th Dist.).

Legal Analysis

**{¶41}** As the State notes in its brief, the arguments raised by Deitz herein are based upon materials that are not a part of the record.[1] Appellate review is limited to the matters in the record from the trial court. *Bigler v. Haynes*, 2025-Ohio-5105, ¶ 21 (3d Dist.). Thus, we are unable to decide the merits of arguments that can only be evaluated on the basis of information that we do not have in the record and are not able to review in this appeal. For this reason, we do not reach the substance of these arguments. Accordingly, the fifth assignment of error is overruled.

---

[1] After the trial court issued its judgment entry on July 2, 2025, Deitz filed a motion to supplement the record for appeal. The trial court then denied this motion. The contents of Deitz's brief suggest that the body of this assignment of error is referring to the materials that he sought to introduce into the record through his motion to supplement.

*Conclusion*

**{¶42}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Shelby County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WALDICK and MILLER, J.J., concur.**

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.   The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  *See* App.R. 30.


John R. Willamowski, Judge


Mark C. Miller, Judge


Juergen A. Waldick, Judge

DATED:
/hls